RATTET, PASTERNAK & GORDON-OLIVER, LLP
Attorneys for the Debtor
550 Mamaroneck Avenue
Harrison, New York 10528
(914) 381-7400
Jonathan S. Pasternak
Erica Feynman

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:                                              Chapter 11
                                                    Case No. 09 22200 (RDD)
SAM'S CERAMIC & STONE, INC.

                    Debtor.

------------------------------------------------------------X

## AMENDED LIQUIDATING CHAPTER 11 PLAN

Sam's Ceramic & Stone, Inc. (the "Debtor") hereby proposes the following Amended Liquidating Chapter 11 Plan pursuant to the provisions of Chapter 11 of the Bankruptcy Code.

### ARTICLE I
### DEFINITIONS

For the purposes of this Plan, and the Disclosure Statement simultaneously filed by the Debtor, the following terms shall have the respective meanings set forth below (such meanings to be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires):

1.1  "Administrative Claims" shall mean all costs and expenses of administration of the chapter 11 case Allowed under Sections 503(b) or 330(a) of the Code and that are entitled to priority under Section 507(a)(2) which may include Claims pursuant to Section 506(c) of the Code.

1.2  "Allowed" shall mean that portion of a Claim or Interest that, (i) has been timely

filed with the Bankruptcy Court and is liquidated in amount and has not been objected to; (ii) has been listed by the Debtor in the Schedules as being neither contingent, unliquidated nor disputed; or (iii) has been allowed by a Final Order of the Bankruptcy Court.

  1.3 "APA" shall mean the Asset Purchase Agreement annexed hereto as Exhibit "A" and made a part hereof.

  1.4 "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Southern District of New York.

  1.5 "Claim" is defined in Section 101(5) of the Code, and shall include, without limitation, any claims of whatsoever type or description against the Debtor, any claim for pre-petition interest, post-petition interest or contingent interest, any claim against the Debtor arising out of the rejection of executory contracts, any claim against the Debtor arising from the recovery of property under Sections 550 and 553 of the Code and any claim against the Debtor that does not arise until after the commencement of the chapter 11 case for a tax entitled to priority under Section 507(a) of the Code.

  1.6 "Code" shall mean the Bankruptcy Code, Title 11 U.S.C. Section 101 et. seq. as amended from time to time and applicable to this case.

  1.7 "Confirmation Date" shall mean the date upon which the Confirmation Order is entered by the Bankruptcy Court.

  1.8 "Confirmation Order" shall mean the order of the Bankruptcy Court pursuant to Section 1129 of the Code confirming the Plan.

  1.9 "Debtor" shall mean Sam's Ceramic & Stone, Inc.

  1.10 "Disbursing Agent" shall mean Rattet, Pasternak & Gordon-Oliver, LLP, who

shall act in such capacity in order to effectuate the payment of distributions under the Plan.

1.11    "Disputed" shall mean a Claim or Interest, or any portion of a Claim or Interest, that is not Allowed.

1.12    "Effective Date" shall mean the date upon which the Confirmation Order becomes a Final Order.

1.13    "Final Order" shall mean an order or judgment which has not been stayed and as to which order or judgment the time to appeal or seek review or rehearing has expired and as to which no appeal, petition for review or rehearing is pending.

1.14    "Interest" shall mean the rights of the shareholders of the Debtor.

1.15    "Petition Date" shall mean February 16, 2009.

1.16    "Plan" shall mean this Amended Liquidating Chapter 11 Plan and any amendments hereto or modifications hereof made in accordance with the provisions of the Code.

1.17    "Purchaser" shall mean John Barile.

1.18    "Priority Claim" shall mean a Claim, other than an Administrative Claim, that is entitled to priority under Section 507 of the Code.

1.19    "Purchase Price" shall mean Purchaser's obligations under the APA, including Purchaser's obligation to pay $15,000 on the closing thereof.

1.20    "Secured Claim" shall mean a Claim that is secured by a lien on property of the Debtor's estate in accordance with Section 506(a) of the Code.

1.21    "Schedules" shall mean the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor as required by Section 521 of the Code and Bankruptcy Rule 1007, and all amendments thereto.

1.22 "State Court Action" shall mean the action captioned, <u>Sam's Floor Covering Corp., Sam's Ceramic & Stone, Inc., et. al. v. John Posimato, et. al.</u>, New York State Supreme Court Westchester County, Index No. 12122/08.

1.23 "Unsecured Claim" shall mean any Claim that is not an Administrative Claim, Priority Claim or Secured Claim including, without limitation, Claims based upon pre-petition trade accounts payable or Claims based upon the rejection of an executory contract during the pendency of the chapter 11 case.

## ARTICLE II
## DESIGNATION OF CLAIMS AND INTERESTS

All holders of Claims and Interests against the Debtor, of whatever nature, whether or not scheduled or liquidated, absolute or contingent, whether Allowed or not, shall be bound by the provisions of the Plan and are hereby classified as follows:

**Class 1:** shall consist of all Allowed Secured Claims.

**Class 2:** shall consist of all Allowed Unsecured Claims.

**Class 3:** shall consist of all Allowed Interests in the Debtor.

In accordance with Section 1123(a)(1) of the Code, Administrative Claims and Priority Claims have not been classified and thus are excluded from the following Classes.

## ARTICLE III - TREATMENT OF CLAIMS UNDER THE PLAN

**3.1 Satisfaction of Claims.** The treatment of and consideration to be received by holders of Allowed Claims shall be in full satisfaction, release and discharge of their respective Claims against the Debtor.

a) <u>Allowed Administrative Claims other than Claims of Professionals:</u> These Allowed Claims shall be paid in the ordinary course and according to the terms and conditions of the

respective contracts with respect to those Claims. The Debtor does not believe that any such Claims exist.

b) <u>Allowed Claims of Professionals</u>: Allowed Administrative Claims of professionals shall be paid in full, in cash, upon the later of (i) allowance by the Court pursuant to Section 330 of the Code or (ii) the Effective Date. The only professional's Claim is that of Debtor's counsel, Rattet, Pasternak & Gordon Oliver, LLP.

c) <u>United States Trustee's Fees</u>: Under the Plan, all United States Trustee statutory fees arising under 28 U.S.C. § 1930 shall be paid in full, in cash, in such amount as they are incurred in the ordinary course of business by the Debtor. The Disbursing Agent shall be responsible for the payment of United States Trustee quarterly fees through the entry of a final decree closing the case.

d) <u>Allowed Priority Claims</u>: Allowed Priority Claims pursuant to 11 U.S.C. § 507(a)(8), if any, shall be paid in full, in cash on the date provided in Section 4.1 hereof.

**3.2** **Class 1:** Allowed Secured Claims shall be paid in the ordinary course pursuant to the terms of the underlying agreements. Upon closing pursuant to the APA, all outstanding obligations of the Debtor to the holders of Allowed Secured Claims shall be assumed by the Purchaser, subject to the liens securing such Allowed Secured Claims. Allowed Class 1 Claims are unimpaired under this Plan and thus holders of such Claims are not entitled to vote.

**3.3 Class 2:** Allowed Unsecured Claims shall receive, pro rata with all other Allowed Unsecured Claims, a distribution equal to 2.5% of such Allowed Claim, which payment shall be made on the date provided in Section 4.1 hereof. Allowed Class 2 Claims shall also receive, pro rata with all other Allowed Unsecured Claims, 100% of the Debtor's interest in the net recovery

(by judgment or settlement) of the claims asserted by the Debtor in the State Court Action (the "State Court Action Proceeds"). The net recovery amount shall be calculated after repayment of all costs, including attorneys' fees and expenses, associated with the prosecution of that action. Allowed Class 2 Claims are impaired under this Plan and holders of such Claims shall be entitled to vote.

**3.4  Class 3:**  Allowed Interests shall receive no distribution on account of said Interests. Class 3 Interests are impaired under the Plan and are deemed to reject the Plan.

## ARTICLE IV
## MEANS FOR EXECUTION

**4.1  Distribution of Cash**.  Except as otherwise provided in the Plan, including without limitation Article VIII of this Plan, the cash required to be distributed to holders of Allowed Claims under the Plan shall be distributed by the Disbursing Agent within ten (10) business days of the Effective Date and with respect to the State Court Action Proceeds, within ten (10) business days of the receipt by the Debtor of such proceeds, except that to the extent that a Claim becomes an Allowed Claim after the Effective Date, within ten (10) days after the order allowing such Claim becomes a Final Order.

**4.2  Means For Implementation**.  The Plan shall be funded (a) with the Purchase Price and (b) the State Court Action Proceeds, and (c) such other amounts of cash necessary to fund all obligations under the Plan, which additional sums the Debtor's principal, Edward Rossi, has committed to pay. The Confirmation Order shall direct Mr. Rossi to make all such payments to the Disbursing Agent that he has committed to pay under this Plan.

**4.3 Sale and Transfer of Assets To Purchaser Upon Closing.**  On the Effective Date, pursuant to the APA, Purchaser shall acquire, and the Debtor shall convey all of the right, title

and interest that Debtor possesses as of the closing thereunder in and to the Assets, as such term is defined in the APA, free and clear of all liens, claims and encumbrances pursuant to Sections 363(b), (f), 365 and 1123 of the Code, and Purchaser shall assume all obligations he has agreed to assume (and no others) under the APA.

## ARTICLE V
## EXECUTORY CONTRACTS

**5.1 Assumption**. On the Effective Date and upon the closing of the APA, the Debtor shall assume the Leases[1] (as defined in the APA) pursuant to Sections 365 and 1123 of the Code and assign them to the Purchaser. On the Effective Date, any other unexpired leases or executory contracts shall be deemed rejected. (The Debtor does not believe that any other such contracts exist.)

**5.2 Cure**. The Debtor shall, through the Disbursing Agent, pursuant to the provisions of Section 1123(a)(5)(G) of the Code, cure all defaults existing under and pursuant to the Leases from the Purchase Price. Payment of any cure amounts due shall be made on the same date as distributions on Allowed Unsecured Claims hereunder.

## ARTICLE VI
## GENERAL AND MISCELLANEOUS PROVISIONS

**6.1 Modification of the Plan**. The Debtor reserves the right, in accordance with Section 1127 of the Code, to amend or modify the Plan with such consent of the Purchaser and

---

1 The Leases are defined in the APA as (1) the Commercial Equipment Lease Agreement, number LA31475, by and between the Debtor and Toyota Motor Credit Corp. as assignee of Summit Handling Systems, dated November 8, 2004 (the "Toyota Lease") and (2) the GMAC Smart Lease Agreement by and between the Debtor and Arroway Chevrolet Inc., dated May 31, 2006 (the "GMAC Lease"). Insofar as the Toyota Lease has a $1.00 buy out at the end of the lease term, it shall be deemed a finance agreement under the Plan and treated as a secured obligation in Class 1. The GMAC Lease however shall be treated as an unexpired lease pursuant to Section 365 of the Code. Both GMAC and Toyota have filed Secured Claims in this proceeding.

Order of the Bankruptcy Court as may be required.

**6.2** **Article and Section References.** Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective section in, article of, or exhibit to the Plan. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan. Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.

**6.3** **Payment Dates.** If any payment or act under the Plan is required to be made or falls on a date which shall be a Saturday, Sunday or a legal holiday, the making of such payment or performance of such act may be completed on the next succeeding business day, and shall be deemed to have been completed timely.

**6.4** **Notices.** Any notices to be forwarded under the Plan shall be in writing and sent by certified mail, return receipt requested, postage pre-paid; or by overnight mail or hand delivery, addressed as follows:

If to the Debtor:

SAM'S CERAMIC & STONE, INC.
285 Central Avenue
White Plains, New York 10606
Attn: Edward Rossi

with a copy to:

RATTET, PASTERNAK & GORDON-OLIVER, LLP
550 Mamaroneck Avenue
Harrison, New York 10528
Attn:   Erica R. Feynman, Esq.

If to The Purchaser:

JOHN BARILE
361 Route 6
Mahopac, New York 10541

The Debtor may designate in writing any other address for purposes of this section, which designation shall be effective upon receipt. Any payment required under the Plan shall be deemed to have been paid on the date when such payment is mailed.

      **6.5**    **Enforceability.** Should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability or operative effect of any and all other provisions of the Plan.

      **6.6**    **Applicable Law.** Except to the extent that the Code is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of New York, except to the extent that other provisions of Federal law are applicable.

      **6.7**    **Successors and Assigns.** The rights and obligations of any entity named or referred to in the Plan shall be binding upon and inure to the benefit of the successors and assigns of such entity.

      **6.8**    **Reservation of Rights.** Neither the filing of this Plan, nor any statement or provision contained herein, shall be or be deemed to be an admission against interest. In the event that the Effective Date does not occur, neither this Plan nor any statement contained herein may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside of this chapter 11 case.

**6.9 U.S. Trustee Fees and Post Confirmation Reports.** The Disbursing Agent shall be responsible for filing post-confirmation reports with the Bankruptcy Court and shall pay all quarterly fees required under 28 U.S.C. § 1930 and applicable interest under 31 U.S.C. § 3717, until the earlier of (a) conversion or dismissal of this chapter 11 case or (b) entry of a final decree closing this chapter 11 case.

## ARTICLE VII
## RESOLUTION OF DISPUTED CLAIMS & RESERVES

**7.1 Objections**. An objection to either the allowance of a Claim or an amendment to the Debtor's Schedules shall be in writing and may either be filed with the Bankruptcy Court or pursued and resolved by other means by the Debtor at any time on or before the Effective Date.

**7.2 Amendment of Claims**. A Claim may be amended prior to the Effective Date only as agreed upon by the Debtor and the holder of such Claim and as approved by the Bankruptcy Court or as otherwise permitted by the Code and Bankruptcy Rules.

**7.3 Reserve for Disputed Claims**. The Debtor shall reserve, on account of each holder of a Disputed Claim, (including a Disputed Claim in respect of the cure amount relating to any of the Leases), in cash, the amount that would otherwise be distributable to such holder were such Disputed Claim an Allowed Claim on the Effective Date. The cash so reserved for the holder of such Disputed Claim, shall be distributed only after such Disputed Claim becomes a subsequently Allowed Claim. The holder of a subsequently Allowed Claim shall not be entitled to any interest on the Allowed Claim, regardless of when distribution thereon is made to or received by such holder.

# ARTICLE VIII
# EFFECT OF CONFIRMATION, DISCHARGE, SURRENDER AND CANCELLATION OF CLAIMS

**8. No Discharge Under the Plan.** Because the Plan contemplates liquidation of the Debtor's assets in accordance with the APA, the Confirmation Order shall not operate as a discharge pursuant to Section 1141(d)(1) of the Code.

**8.2 Exculpation**. Neither the Debtor, the Purchaser nor any of their respective members, shareholders, officers, directors, employees, attorneys, advisors, agents, representatives and assigns shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with this chapter 11 case or the Plan except with respect to their obligations under the Plan, the APA and any related agreement or for bad faith, willful misconduct, gross negligence, breach of fiduciary duty, malpractice, fraud, criminal conduct, unauthorized use of confidential information that causes damages, and/or ultra vires acts. Notwithstanding any other provision hereof, nothing in Sections 8.2 or 8.3 hereof shall (a) effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Debtor, the Purchaser, or any of their respective members, shareholders, officers, directors, employees, attorneys, advisors, agents, representatives and assigns (the "Released Parties"), nor shall anything in Sections 8.2 or 8.3 hereof enjoin the United States or any state or

local authority from bringing any claim, suit, action or other proceedings against the Released Parties referred to herein for any liability whatever, including without limitation, any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority, nor shall anything in this Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Parties referred to herein, or (b) limit the liability of the Debtor's professionals to the Debtor pursuant to Rule 1.8(h)(1) of the New York Rules of Professional Conduct."

**8.3 Confirmation Injunction.** Effective on the Confirmation Date, all persons who have held, hold or may hold Claims or Interests are enjoined from taking any of the following actions against or affecting the Debtor or assets of the Debtor with respect to such Claims, Interests or Administrative Claims, except as otherwise set forth in the Plan, and other than actions brought to enforce any rights or obligations under the Plan or appeals, if any, from the Confirmation Order:

(i) Commencing, conducting or continuing in any manner, directly or indirectly, any suit, action, arbitration, or other proceeding of any kind against the Debtor or the assets of the Debtor;

(ii) Enforcing, levying, attaching, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtor, the assets of the Debtor or the Acquired Assets;

(iii) Creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor, the assets of the Debtor or the Assets (as defined in

the APA);

(iv) Asserting any setoff, right of subrogation, or recoupment of any kind, directly or indirectly, against the Debtor, the assets of the Debtor or the Acquired Assets; and

(v) Proceeding in any manner and any place whatsoever that does not conform to or comply with the provisions of the Plan.

## ARTICLE IX
## DISTRIBUTIONS AND UNCLAIMED PAYMENTS

Except as otherwise provided herein, in the event any claimant fails to claim any distribution within four (4) months from the date of such distribution, such claimant shall forfeit all rights thereto, and to any and all future payments, and thereafter the Claim for which such cash was distributed shall be treated as a disallowed Claim. Distributions to Claimants entitled thereto shall be sent to their last known address set forth on a proof of claim filed with the Bankruptcy Court or, if no proof of claim is filed, on the Schedules filed by the Debtor or to such other address as may be later designated by a creditor in writing. The Disbursing Agent and the Debtor shall use their collective best efforts to obtain current addresses for all claimants. The Disbursing Agent shall notify the Debtor of all returned distributions. All unclaimed cash shall be returned to Mr. Rossi.

# ARTICLE X
# EVENTS OF DEFAULT

10.1 An Event of Default shall occur if the Disbursing Agent shall fail to make any payment when due or shall fail to comply with any other material terms of this Plan, and written notice of same has been provided to the Disbursing Agent and the Bankruptcy Court.

10.2 Following an Event of Default, if such Default has not been cured within ten (10) days thereafter, any holder of a Claim, payment of which is in Default, shall have the right to (a) accelerate and demand payment due to such holder under the Plan; and/or (b) commence an action against the Debtor in the Bankruptcy Court or United States District Court to compel payment.

# ARTICLE XI
# RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction of the chapter 11 case:

(a)  To determine all controversies relating to or concerning the allowance of Claims upon objection to such Claims by any party in interest;

(b)  To determine requests for payment of Claims entitled to priority under Section 507(a)(1) of the Code, including any and all applications for compensation for professional and similar fees

(c)  To determine any and all applications, adversary proceedings, and contested or litigated matters over which the Bankruptcy Court has subject matter jurisdiction pursuant to 28 U.S.C Sections 157 and 1334;

(d)  To determine all disputed, contingent or unliquidated Claims;

(e)  To determine requests to modify the Plan pursuant to Section 1127 of the Code or to

remedy any defect or omission or reconcile any inconsistencies in this Plan or Confirmation Order to the extent authorized by the Code;

    (f)  To make such orders as are necessary or appropriate to carry out the provisions of the Plan;

    (g)  To resolve controversies and disputes regarding the interpretation or enforcement of the terms of the Plan; and

    (h)  To enter a final decree closing this chapter 11 case.

Dated:  White Plains, New York
       September 8, 2009

SAMS CERAMIC & STONE, INC.

By__*/s/ Edward Rossi* __
    Edward Rossi, President

RATTET, PASTERNAK & GORDON-OLIVER, LLP
Attorneys for the Debtor
550 Mamaroneck Avenue
Harrison, New York 10528
(914) 381-7400


By:  */s/ Erica R. Feynman*___
    Erica R. Feynman