RATTET, PASTERNAK & GORDON-OLIVER, LLP
Attorneys for the Debtor
550 Mamaroneck Avenue
Harrison, New York 10528
(914) 381-7400
Jonathan S. Pasternak
Erica Feynman

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re:                                                          Chapter 11
                                                                Case No. 09 22200 (RDD)
SAM'S CERAMIC & STONE, INC.

                              Debtor.

-------------------------------------------------------------X

## AMENDED DISCLOSURE STATEMENT

Sam's Ceramic & Stone, Inc. (the "Debtor") submits this Amended Disclosure Statement

pursuant to Section 1125(b) of Title 11, United States Code, 11 U.S.C. §§ et seq. (the

"Bankruptcy Code") and Rule 3017 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), in connection with its Amended Liquidating Chapter 11 Plan, dated

September 8, 2009 (the "Plan") to all known holders of Claims against or Interests in the Debtor

in order to adequately disclose information deemed to be material, important and necessary for

the Debtor's creditors to make a reasonably informed judgment about the Plan. A copy of the

Plan is attached hereto as Exhibit "A."[1]

---

1 Unless otherwise defined herein, capitalized terms shall have the same meaning ascribed to them in the Plan.

The Bankruptcy Court has conditionally approved this Disclosure Statement in this "small business case" under Section 1125(f)(3) of the Bankruptcy Code. It has scheduled a hearing to consider final approval of this Disclosure Statement and Confirmation of the Plan. for October ____, 2009 at _:___ p.m. (the "Hearing"). Under Section 1126(b) of the Bankruptcy Code, only Classes of Allowed Claims that are "impaired" under the Plan, as defined by Section 1124 of the Bankruptcy Code, are entitled to vote on the Plan. Generally, a Class is impaired if its legal, contractual or equitable rights are altered or reduced under the Plan. Class 2 creditors under the Plan are impaired and therefore are entitled to vote. Because the holders of Interests are receiving no distribution under the Plan, they are deemed to have rejected the Plan.

To be accepted by a Class, the Plan must be accepted by more than one half in number and two-thirds in dollar amount of the Allowed Claims actually voting in such Class.

WHILE THE COURT HAS CONDITIONALLY APPROVED THIS DISCLOSURE STATEMENT FOR THIS SMALL BUSINESS DEBTOR TO PERMIT A VOTE TO BE TAKEN ON THE PLAN, THE COURT HAS NOT YET FINALLY APPROVED THE DISCLOSURE STATEMENT OR THE PLAN AND THIS DISCLOSURE STATEMENT IS NOT TO BE CONSTRUED AS AN ENDORSEMENT OF THE PLAN BY THE BANKRUPTCY COURT. CREDITORS ARE URGED TO CONSULT WITH THEIR COUNSEL REGARDING THE PLAN.

**BALLOTS ACCEPTING OR REJECTING THE PLAN MUST BE MAILED OR HAND DELIVERED (FAXED OR E-MAILED BALLOTS WILL NOT BE COUNTED) TO RATTET, PASTERNAK & GORDON-OLIVER, LLP, 550 MAMARONECK AVENUE, HARRISON, NEW YORK 10528, ATTENTION: ERICA R. FEYNMAN, ESQ.** <u>**SO AS TO BE RECEIVED ON OR BEFORE 4:00 P.M. EASTERN TIME, SEPTEMBER ____, 2009**</u> **FOR THEM TO BE CONSIDERED.**

**YOUR VOTE ON THE PLAN IS IMPORTANT.**

# I. INTRODUCTION

## A. Background

The Debtor is a retail store specializing in ceramic and stone products such as countertops and flooring. When it was incorporated in 1999, the Debtor operated at 307 Central Avenue, White Plains, New York.

The Debtor enjoyed great success from 1999 until 2005. However, in 2005, one of the Debtor's shareholders, who had been involved in the Debtor's operations since its inception, opened up a competing business 1 ½ miles from the Debtor's location. With his departure, the Debtor lost a substantial amount of its business, which resulted in a significant drop in revenue. In response, the Debtor undertook a number of cost cutting measures, the most significant of which was its decision to close its 307 Central Avenue location and consolidate operations with Sam's Floor Covering, Inc. ("Floor Covering"), another retail operation which was located at 285 Central Avenue.  Floor Covering has many shareholders in common with the Debtor and is also run primarily by Edward Rossi, the Debtor's principal. It was the hope of the Debtor's management that by combining both operations under one roof, sufficient costs would be cut to enable the Debtor to rebound from its cash flow problems and start to pay down the significant amount of trade debt it had amassed.

Despite the Debtor's best efforts, the relocation of operations did not spark a financial turnaround. The loss in business caused by the Debtor's shareholder opening a competing business, coupled with the downturn in the economy and the resultant downturn in the construction industry, created a scenario which necessitated the filing of this Chapter 11 case.

**B. Commencement of the Chapter 11 Proceeding**

On February 16, 2009 (the "Petition Date"), the Debtor filed a voluntary petition for reorganization pursuant to Chapter 11 of the Bankruptcy Code. The Debtor has continued in possession of its property and the management of its business affairs as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

**C. Employment of the Debtor's Professionals**

On the Petition Date, the Debtor filed an application to retain Rattet, Pasternak & Gordon-Oliver, LLP, as its bankruptcy counsel. By order of the Bankruptcy Court dated March 31, 2009, the Bankruptcy Court approved the retention of RPGO, *nunc pro tunc,* to the Petition Date.

**D. Filing of Schedules of Assets and Liabilities and Statement of Financial Affairs**

On March 5, 2009 the Debtor filed its Schedules of Assets and Liabilities, together with its Statement of Financial Affairs (collectively, the "Schedules"). The Debtor's Schedules are available on the Bankruptcy Court's website: www.nysb.uscourts.gov.

**E. Establishment of a Claims Bar Date and Claims Process**

Pursuant to an order of the Bankruptcy Court, May 8, 2009 was established as the last date by which creditors may file proofs of claim in the Chapter 11 case ("Bar Date") and subsequently notice of the Bar Date was served on all creditors listed on the Debtor's creditor matrix filed with the Bankruptcy Court as well as parties filing notices of appearance and creditors who had previously filed a proof of claim in the case.

The Debtor, together with counsel, is in the process of reviewing all Claims filed and intends on filing objections to certain of those Claims prior to the hearing to approve this Disclosure Statement and to consider confirmation of the Plan. The Debtor, together with counsel has also worked diligently with the Debtor's taxing authorities to resolve certain tax Claims which were filed in incorrect amounts. In the event that the Debtor is unable to resolve these Claims, an objection to such Claims will be filed prior to the Effective Date.

**F. The Sale of the Debtors Assets Through the Plan**

Prior to and during the initial stages of this chapter 11 case, the Debtor seriously considered trying to restructure its operations on its own. However, the Debtor's business performance and, even more importantly, the Debtor's cash flow continue to be negatively impacted by the downturn in the economy and more specifically the construction and home improvement industry. Simply put, the Debtor does not believe that it has sufficient cash flow to continue operating, let alone the significant amount of money that would be necessary to fund a plan of reorganization on its own.

Fortunately, just prior to the Petition Date, the Debtor was contacted by John Barile, another local retailer who expressed interest in buying the assets of the Debtor ("Purchaser"). Purchaser currently operates a "Sam's" location in Mahopac, New York, which he purchased from the Debtor's principal in 2002. Purchaser expressed to the Debtor his desire to expand his business operations to lower Westchester, and the Debtor's White Plains presence, good relationship with local customers and suppliers and excellent reputation for quality and service were of great interest to Purchaser and motivated him to make an offer to purchase the Debtor's Assets as a going concern.

In 2002, Edward Rossi, the majority shareholder of the Debtor, sold his Mahopac "Sam's" location ("Mahopac Sams") to Purchaser, along with the building in which that store operated. The purchase of Mahopac Sams was paid for in full; however, Mr. Rossi agreed to finance the sale of the building to Purchaser over a term, and as security for such sale, Mr. Rossi took back a mortgage on the building. Payments on the building continue to be made by Purchaser to Mr. Rossi on a monthly basis and shall continue through 2014.

After ongoing negotiations between the Debtor and the Purchaser, the Debtor has determined, in its exercise of reasonable business judgment that a sale of the Debtor's Assets under the Asset Purchase Agreement between the Debtor, as seller, and the Purchaser, as Purchaser, dated as of July 28, 2009 (the "APA"), a copy of which is annexed as Exhibit "A" to the Plan, is in the best interest of all creditors.

**G. The Asset Purchase Agreement**

The APA contemplates that the Purchaser shall acquire substantially all of the Debtor's business Assets (as that term is defined in the APA) on the following principal terms:

<u>Purchase Price:</u> The Plan shall be partially funded from the purchase price under the APA, which is in the amount of $15,000, payable at closing. A deposit in the amount of $3,000 is currently on deposit in escrow with Debtor's counsel pending confirmation of the Plan and closing on the APA.

<u>Sale and Transfer of Assets To Purchaser Upon Effective Date.</u> Pursuant to the APA, on the Plan's Effective Date, Purchaser shall acquire, and the Debtor shall convey, all of the right, title and interest that Debtor possesses as of the closing in and to the Assets, free and clear of all liens, claims and encumbrances pursuant to Sections 363(b), (f) and 365 of the Code.

Sale and Transfer Free and Clear of all Liens, Claims, Etc. The sale and transfer of the Assets shall be deemed free and clear (subject to and except for the assumed liabilities under the Leases (as defined under the APA and Allowed Secured Claims specifically assumed under the APA)) of all liens, including mechanics liens, claims, debts, causes of action, obligations, liabilities, interests, encumbrances, charges, mortgages and claims of any kind, nature or description whatsoever, whether fixed or contingent, perfected or unperfected (collectively, "Liabilities"). Except as expressly permitted or otherwise specifically provided for in the APA, the Plan or the Confirmation Order, and all persons and entities asserting Liabilities of any kind or nature whatsoever against or in Debtor or the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinated), arising under or out of, in connection with, or in any way relating to, Debtor, the Assets, the operation of the Debtor's business prior to the Closing Date (as defined in the APA), or the transfer of the Assets to Purchaser, shall be forever barred, estopped, and permanently enjoined from asserting against Purchaser, its successors or assigns, its property, or the Assets, such Liabilities, including but not limited to any creditor or interest holder who had or could have had a Claim against Debtor or Debtor's estate.

Closing. The closing under the APA shall take place on the Effective Date of the Plan.

Other Terms of Sale. All terms and conditions of the sale shall be governed by the APA.

Financial Wherewithal of the Purchaser. The Purchaser has extensive experience in the flooring industry, has sufficient capital and financial wherewithal to pay the entire Purchase Price and provide the adequate assurance of future performance under the assumed Leases, as contemplated under the sale transaction described above.

<u>Sale Is In The Best Interest of the Estate.</u>  Absent consummating the transaction with the Purchaser, the Debtor will be unable to fund a chapter 11 plan and the creditors of the estate would receive no recovery on their Claims. It is likely that if the proposed sale is not approved, this Chapter 11 case will be dismissed or converted to Chapter 7 of the Bankruptcy Code to the detriment of the creditors of the estate. On the other hand, in the event that the sale is approved, all Allowed Administrative and Priority Claims will be paid in full and the holders of Allowed Unsecured Creditors will receive a 2.5% distribution in cash plus their pro rata share of 100% of the Debtor's interest in the net recovery (by judgment or settlement) of the claims asserted by the Debtor in the State Court Action (the "State Court Action Proceeds"), discussed below.

The Debtor believes that the sale to Purchaser under the APA is the only viable option for a sale of the Assets of the Debtor and that further marketing efforts would only result in additional expense to the estate and delay in the administration of this case. Purchaser's offer is fair, reasonable, greatly exceeds the liquidation value of the Debtor and avoids the Debtor's imminent liquidation.

It is important to note that Purchaser's desire to purchase the Assets of the Debtor is based upon his current ownership of Mahopac Sams. The Debtor does not believe that there is any market for the Assets other than Purchaser.  First, the Debtor has no real property lease to transfer for value. While Purchaser does intend, at this time, to continue operating a business under the name "Sam's Ceramic & Stone", utilizing the Debtor's Assets, at the Debtor's present location, he understands that no written lease for such premises is being assigned to him, nor is there any promise of a future lease, sublease or even written concession arrangement for the premises. Second, the Debtor has no fixed assets of any substantial value and no sizeable

inventory which could be liquidated in such a way as to yield sufficient funds to confirm a plan. Notwithstanding, Purchaser remains willing to purchase the Assets, most of which are intangibles (i.e. name, phone number, customer list) and assume liability of the existing Lease agreements and the Secured Claims specifically described in the APA, for a purchase price which, taken together with Mr. Rossi's contribution, discussed below, will fund the Plan.

Finally, Purchaser has agreed to loan Mr. Rossi the funds required for Mr. Rossi's contribution under paragraph 4.2 of the Plan of the remaining funds needed to make the distributions to creditors provided for under the Plan which is approximately $25,000. This contribution by Mr. Rossi provides the balance of the funds needed to satisfy the Allowed Administrative and Priority Claims and provide pro rata 2.5% cash distribution to holders of Allowed Unsecured Claims. Without Purchaser's willingness to loan these funds to Mr. Rossi, no plan could be confirmed, as there would be insufficient funds to do so. The reason for the loan is to enable a Plan to be confirmed and for Purchaser to purchase the Assets free and clear of all liens, claims and encumbrances, which is a condition of closing.

**H. State Court Action**

On or about November, 2007, the Debtor, along with several other parties, commenced an action in New York State Supreme Court captioned, Sam's Floor Covering Corp., Sam's Ceramic & Stone, Inc., et. al. v. John Posimato, et. al., New York State Supreme Court Westchester County, Index No. 12122/08, seeking damages against John Posimato as well as several other entities, based on claims including but not limited to fraud, breach of contract, conversion, breach of fiduciary duty (the "State Court Action"). The basis for the Debtor's claims arise out of Mr. Posimato's actions, while an officer, director, shareholder and fiduciary

of the Debtor, in opening a competing business in the immediate vicinity of the Debtor, thereby causing damage to the Debtor as well as the other plaintiff's. The damages sought in connection with the claims are not expressly defined but, rather, are in an amount to be determined at trial.

The Debtor, along with its co-plaintiff, Floor Covering, is being represented by the law firm of Lovett & Bellantoni, LLP ("State Court Counsel"). State Court Counsel have solely been paid, and will continue to be paid solely by Floor Covering. In the event of a recovery in the State Court Action (resulting either from a judgment or settlement), holders of Allowed Unsecured Claims shall receive a pro rata cash distribution equal to 100% of the Debtor's interest in the net recovery (by judgment or settlement) of the claims asserted by the Debtor in the State Court Action (the "State Court Action Proceeds"). The net recovery amount shall be determined after the repayment to Floor Covering by all Plaintiffs from the proceeds of the action for all costs associated with the prosecution of the action including reasonable attorneys' fees and costs. Discovery has been completed in the State Court Action and a trial has been scheduled for September, 2009. However, due to the inherent risks and uncertainty associated with all litigation, it should be noted that the Debtor cannot predict the likelihood of success in the State Court Action or the timing of a recovery therein, if any.

**THE DEBTOR STRONGLY BELIEVES THAT THE SALE OF ITS BUSINESS ASSETS UNDER THE PLAN TO THE PURCHASER WILL RESULT IN THE HIGHEST AND BEST RETURN TO CREDITORS. ABSENT THE SALE, THE DEBTOR BELIEVES THAT IT WILL NOT HAVE ADEQUATE OR SUFFICIENT CAPITAL TO REORGANIZE, AND THE LIQUIDATION VALUE OF THE DEBTOR'S ASSETS WOULD RESULT IN NO RECOVERY TO THE CREDITORS OF THE ESTATE. AS SUCH, THE DEBTOR BELIEVES THAT THE SALE TO THE PURCHASER IS IN THE BEST INTERESTS OF CREDITORS AND URGES CLASS 2 TO ACCEPT THE PLAN AND THE SALE CONTEMPLATED THEREIN.**

## II.  THE PLAN OF REORGANIZATION

THE FOLLOWING IS A BRIEF SUMMARY OF THE PLAN AND SHOULD NOT BE
RELIED ON FOR VOTING PURPOSES.  THE PLAN REPRESENTS A PROPOSED
LEGALLY BINDING AGREEMENT AND CREDITORS ARE URGED TO CONSULT WITH
THEIR COUNSEL IN ORDER TO FULLY UNDERSTAND THE PLAN AND TO MAKE AN
INTELLIGENT JUDGMENT CONCERNING IT.

The Plan will be funded partly with the proceeds of the sale of the Debtor's Assets as

detailed in the APA and partly with a contribution from Edward Rossi, the Debtor's principal

(which funds are being loaned to Mr. Rossi, individually, by the Purchaser). These proceeds are

sufficient to pay all Allowed Administrative Claims as well as to fund a pro rata 2.5%

distribution to the holders of Allowed Unsecured Claims. In addition, holders of Allowed

Unsecured Claims will be entitled to a pro rata share of the State Court Action Proceeds (as

defined above). The Debtor believes that the Plan is fair and reasonable and strongly

recommends that the creditors accept the Plan.

### A.      Treatment of Unclassified Claims Under the Plan

1.      Allowed Administrative Claims other than Claims of Professionals:  The Debtor

has remained current in its post-petition expenses and therefore, does not anticipate any Allowed

Administrative Claims at Confirmation. However, to the extent that any such Claims should

exist, they shall be paid in the ordinary course and according to the terms and conditions of the

respective contracts underlying such Claims.

2.      Allowed Administrative Claims of Professionals:    Allowed Administrative

Claims of professionals shall be paid, in full, in cash, upon the later of (i) allowance by the Court

pursuant to Section 330 of the Bankruptcy Code or (ii) the Effective Date. The only such Claim

is that of Rattet, Pasternak & Gordon-Oliver, LLP, attorneys for the Debtor, in the approximate net amount of $5,000.

3. <u>United States Trustee's Fees</u>: Under the Plan, all United States Trustee statutory fees arising under 28 U.S.C. § 1930 shall be paid in full, in cash, in such amount as they are incurred in the ordinary course of business by the Debtor. The Disbursing Agent shall be responsible for the payment of United States Trustee quarterly fees through the entry of a final decree closing the cases.

4. <u>Allowed Priority Claims</u>: The Disbursing Agent shall pay, in full and in cash, Priority Claims entitled to Priority pursuant to Section 507(a)(8) of the Bankruptcy Code within ten (10) days of the Effective Date. Priority Claims consist of the Claims of:

(i) New York State Department of Taxation and Finance in the amount of $16,034.36,

(ii) New York State Department of Labor, Unemployment Insurance Division in the amounts of $673.44 and $644.35.

(iii) Internal Revenue Service in the amount of $7,032.13

(iv) CT Department of Revenue Services in the amount of $610.00.

Priority Tax Claims are unimpaired under the Plan, and holders of such claims are not entitled to vote on the Plan.

The Debtor does not believe there are any other Priority Claims.

**B.      Treatment of Classes Entitled To Vote Under the Plan**

<u>CLASS 1 – Secured Claims:</u> Class 1 consists of the Secured Claim of Toyota Financial Services ("Toyota") which arises out of a lease agreement for certain equipment. However, the underlying contract document provides that the Debtor may purchase the leased equipment for

$1.00 thereby rendering the underlying obligation akin to a secured financing agreement as opposed to a lease agreement. In addition, Toyota has filed a Secured Claim in this case. On the Effective Date and upon the closing on the APA, the Purchaser shall assume the Debtor's obligations to Toyota, subject to the lien of Toyota in the underlying equipment and shall continue to satisfy the ongoing obligations to Toyota in the ordinary course of business pursuant to the terms of the underlying agreement. The Allowed Class 1 Claim is unimpaired and as such, the holder of such Claim shall be deemed to accept the Plan.

CLASS 2 – General Unsecured Claims: Class 2 consists of the holders of Allowed Unsecured Claims which total approximately $375,000. Each holder of a Class 2 Claim shall receive, pro rata with all other Allowed Unsecured Creditors, a distribution equal to, (1) 2.5% of such Allowed Claim within ten (10) days of the Effective Date, and (2) the State Court Action Proceeds. However, it should be noted that the likelihood of recovery in the State Court Action or the timing for a recovery, if any, can not be predicted by the Debtor.

Allowed Class 2 Claims are impaired under the Plan and therefore holders of such Claims are entitled to vote.

CLASS 3 – Equity Interests: Class 3 consists of holders of equity Interests in the Debtor. Class 3 shall receive no distribution on account of their Interests. Class 3 Equity Interests are impaired pursuant to Section 1126 of the Code and holders of such Interests shall be deemed to reject the Plan.

C. **Resolution Of Disputed Claims & Reserves**

(a)    Objections.  An objection to the allowance of a Claim shall be in writing and may be filed with the Bankruptcy Court by the Debtor or any other party in interest on or before the

Effective Date.

(b)    Amendment of Claims.  A Claim may be amended prior to the Effective Date
only as agreed upon by the Debtor and the holder of such Claim and as approved by the
Bankruptcy Court or as otherwise permitted by the Code and Bankruptcy Rules.

(c)    Reserve for Disputed Claims.  The Debtor shall reserve, on account of each
holder of a Disputed Claim, that property which would otherwise be distributable to such holder
on such date were such Disputed Claim an Allowed Claim on the Effective Date, or such other
property as the holder of such Disputed Claim and the Debtor may agree upon.  The property so
reserved for the holder, to the extent such Disputed Claim is allowed, and only after such
Disputed Claim becomes a subsequently Allowed Claim, shall thereafter be distributed to such
holder.

(d)    Claims Estimation. The Debtor may, at any time, request that the Bankruptcy
Court estimate any Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code,
regardless of whether or not the Debtor has previously objected to such Claim, and the
Bankruptcy Court retains jurisdiction to estimate any Claim at any time, including, without
limitation, during litigation concerning any objection to such Claim. In the event that the
Bankruptcy Court estimates any Disputed Claim, that estimated amount constitutes either the
Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the
Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the
Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment of
such Claim.

(e)    Distributions to Holders of Subsequently Allowed Claims.  Unless another date is

14

agreed on by the Debtor and the holder of a particular subsequently Allowed Claim, the Debtor

shall, within ten (10) days after an Order resolving the Disputed Claim becomes a Final Order,

distribute to such holder with respect to such subsequently Allowed Claim that amount, in cash,

from the cash held in reserve for such holder and, to the extent such reserve is insufficient, from

any other source of cash otherwise available to the Debtor, equal to that amount of cash which

would have been distributed to such holder from the Effective Date through such distribution

date had such holder's subsequently Allowed Claim been an Allowed Claim on the Effective

Date.  The holder of a subsequently Allowed Claim shall not be entitled to any interest on the

Allowed Amount of its Claim, regardless of when distribution thereon is made to or received by

such holder.

      (f)      <u>Disputes Regarding Rights to Payments or Distribution</u>. In the event of any

dispute between and among Claimants (including the entity or entities asserting the right to

receive the disputed payment or distribution) as to the right of any entity to receive or retain any

payment or distribution to be made to such entity under the Plan, the Debtor may, in lieu of

making such payment or distribution to such entity, remit the disputed portion of the Claim into

an escrow account or to a distribution as ordered by a court of competent jurisdiction as the

interested parties to such dispute may otherwise agree among themselves. Notwithstanding

anything to the contrary, the Debtor shall make distributions on account of the undisputed

portion of a Claim to such Claimants.

      (g)      <u>Claims Procedures Not Exclusive</u>. All of the aforementioned Claims objection,

estimation and resolution procedures are cumulative and not necessarily exclusive of one

another. On and after the Confirmation Date, Claims which have been estimated may

subsequently be compromised, settled, withdrawn, or otherwise resolved without further order of the Bankruptcy Court.

**D. Amendment, Modification, Withdrawal or Revocation of the Plan.**

The Debtor reserves the right, in accordance with the Section 1127 of the Code, to amend or modify the Plan with such consent of the Purchaser and Order of the Bankruptcy Court, as may be required.

The Debtor may withdraw or revoke the Plan prior to the Confirmation Date. If such a withdrawal or revocation occurs, or if Confirmation does not occur, the Plan will be null and void. In such event, nothing contained in the Plan will constitute a waiver or release of any Claim by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any other person in any further proceedings involving the Debtor.

**E. Unclaimed Property**

Except as otherwise provided herein, in the event any claimant fails to claim any distribution within four (4) months from the date of such distribution, such claimant shall forfeit all rights thereto, and to any and all future payments, and thereafter the Claim for which such cash was distributed shall be treated as a disallowed Claim. Distributions to Claimants entitled thereto shall be sent to their last known address set forth on a proof of claim filed with the Bankruptcy Court or, if no proof of claim is filed, on the Schedules filed by the Debtor or to such other address as may be later designated by a creditor in writing. The Disbursing Agent and the Debtor shall use their collective best efforts to obtain current addresses for all claimants. The Disbursing Agent shall notify the Debtor of all returned distributions. All unclaimed cash shall be returned to Mr. Rossi.

**F. Plan Injunction**

Except as otherwise expressly provided in the Plan, any and all entities who have held, hold or may hold Claims or Interests against or in the Debtor shall, as of the Effective Date, be enjoined from:

(a) commencing, conducting, or continuing, in any manner, any suit, action, or other proceeding of any kind (including, without limitation, in any judicial, arbitral, administrative or other forum) against the Debtor arising out of any act or omission of the Debtor;

(b) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, on any judgment, award, decree, or order against the Debtor with regard to such entities' Claim against the Debtor;

(c) creating, perfecting or otherwise enforcing, in any manner, directly or indirectly, any encumbrance of any kind against the Debtor, the assets of the Debtor, or the Assets (as defined in the APA);

(d) asserting any set off, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation due the Debtor, the property of the Debtor, or any successor-in-interest to the Debtor or the Acquired Assets; and

(e) acting in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

**G. Exculpation.** Neither the Debtor, the Purchaser nor any of their respective members, shareholders, officers, directors, employees, attorneys, advisors, agents, representatives and assigns shall have or incur any liability to any entity for any action taken or omitted to be taken

in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with this chapter 11 case or the Plan except with respect to their obligations under the Plan, the APA and any related agreement or for bad faith, willful misconduct, gross negligence, breach of fiduciary duty, malpractice, fraud, criminal conduct, unauthorized use of confidential information that causes damages, and/or ultra vires acts. Notwithstanding any other provision hereof, nothing in Sections 8.2 or 8.3 of the Plan shall (a) effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Debtor, the Purchaser, or any of their respective members, shareholders, officers, directors, employees, attorneys, advisors, agents, representatives and assigns (the "Released Parties"), nor shall anything in Sections 8.2 or 8.3 of the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against the Released Parties referred to herein for any liability whatever, including without limitation, any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority, nor shall anything in Section 8.2 of the Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Parties referred to herein, or (b) limit the liability of the

Debtor's professionals to the Debtor pursuant to Rule 1.8(h)(1) of the New York Rules of Professional Conduct."

### H. Full and Final Satisfaction

Pursuant to the Plan, all payments and all distributions shall be in full and final satisfaction, settlement, release and discharge of all Claims and Interests, except as otherwise provided in the Plan.

### I. Retention of Jurisdiction

The Bankruptcy Court shall retain jurisdiction of the chapter 11 case:

(a) To determine all controversies relating to or concerning the allowance of Claims upon objection to such Claims by any party in interest;

(b) To determine requests for payment of Claims entitled to priority under Section 507(a)(1) of the Code, including any and all applications for compensation for professional and similar fees

(c) To determine any and all applications, adversary proceedings, and contested or litigated matters over which the Bankruptcy Court has subject matter jurisdiction pursuant to 28 U.S.C Sections 157 and 1334;

(d) To determine all disputed, contingent or unliquidated Claims;

(e) To determine requests to modify the Plan pursuant to Section 1127 of the Code or to remedy any defect or omission or reconcile any inconsistencies in this Plan or Confirmation Order to the extent authorized by the Code;

(f) To make such orders as are necessary or appropriate to carry out the provisions of the Plan;

(g)  To resolve controversies and disputes regarding the interpretation or enforcement of the terms of the Plan; and

(h)  To enter a final decree closing this chapter 11 case.

### J. Contracts and Unexpired Leases

Any unexpired lease or executory contract that has not been expressly assumed or rejected by the Debtor or has not naturally expired during the course of the Chapter 11 Case shall, as of the Effective Date, be deemed to have been rejected by the Debtor.

The Debtor anticipates that, on Effective Date and upon closing on the APA, it will assume its lease agreement with GMAC and assign same to Purchaser.

### K. Post-Confirmation Fees, Final Decree

The reasonable compensation and out-of-pocket expenses incurred post-Confirmation Date by the Disbursing Agent and the professionals retained in the Chapter 11 Case shall be paid by the Disbursing Agent within ten (10) days upon presentation of invoices for such post-petition professional services. All disputes concerning post-confirmation fees and expenses shall be subject to Bankruptcy Court jurisdiction.

A final decree shall be entered as soon as practicable after distributions have commenced under the Plan.

### L. Continuation of Bankruptcy Stays

All stays provided for in the Chapter 11 Case under Section 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

**M. Avoidance and Recovery Actions**

As of and subject to the occurrence of the Effective Date, the Debtor will waive and release any causes of action under Sections 544, 547, 548, 550, 551 and 553 of the Bankruptcy Code, except that such waiver shall not extend to any defense to a claim asserted by the Debtor pursuant to Section 502(d) of the Bankruptcy Code. The Debtor believes, after a thorough investigation and review with its counsel, that there are no such causes of action that would provide a meaningful source of funds for the Debtor.

### III.    FINANCIAL INFORMATION

**A. The Debtor's Schedules of Assets and Liabilities**. Schedule of the Debtor's assets and liabilities have been filed with the Clerk of the Court and may be inspected by all interested parties.

**B. The estimated amounts required on confirmation are:**

| | |
|---|---|
| Professional Fees & Expenses | $   5,000.00 |
| Priority Tax Claims: | $ 25,000.00 |
| Cure Payment to Class 1 Claims | $      100.00 |
| Payment to Class 2 Claims | $ 10,000.00 |

**Estimated Total Required on Confirmation……………………………..$  41,000.00**

The payments required on confirmation shall be funded with the proceeds of sale of the Debtor's Assets and the contribution of Edward Rossi.

**C. Chapter 7 Liquidation Analysis.**   If this case were liquidated under Chapter 7 of the Bankruptcy Code as opposed to means set forth herein, the holders of Class 2 Unsecured Claims would receive no distribution. As discussed at length above, the Purchaser has entered into the APA based upon the good reputation and ongoing business contacts of the Debtor. Although not

purchasing the business as a going concern but rather only the assets, the Purchaser intends to continue to operate a retail business under the name of "Sam's Ceramic & Stone" at the same location. The conversion of this case to Chapter 7 would certainly result in a disruption of business operations and a cancellation of the APA. The Debtor believes that the Assets are not of the same value to any other person or entity as they are to the Purchaser based upon his ownership of Mahopac Sams. Without the contemplated sale under the terms of the APA and a simple liquidation of the assets as would typically occur in a Chapter 7, after the administrative costs associated therewith (i.e. trustee fees, commissions and additional attorneys' fees), there would be no distribution to unsecured creditors.

**THE DEBTOR THEEFORE STRONGLY RECOMMENDS ACCEPTANCE OF THE PLAN. CREDITORS ARE URGED TO CONSULT WITH THEIR ATTORNEYS AND AMONGST THEMSELVES IN DETERMINING WHETHER TO ACCEPT OR REJECT THE PLAN.**

## IV. <u>CONFIRMATION PROCEDURE</u>

**A.     Time to Vote.** Pursuant to a Court order, ballots on the Debtor's Plan must be filed within a prescribed period of time. All ballots should be properly completed as to whether the creditor accepts or rejects the Plan and be forwarded, in accordance with the instructions on the ballot, to Rattet, Pasternak & Gordon-Oliver, LLP, 550 Mamaroneck Avenue, Suite 510, Harrison, New York 10528, Attn: Erica R. Feynman.

**B.     Solicitation of Votes.**  Any holder of a Claim in Class 2 is entitled to vote if either (i) such holder's Claim has been scheduled by the Debtor in the schedules filed with the Bankruptcy Court (provided that such Claim has not been scheduled as disputed, contingent or unliquidated), or (ii) such holder has filed a proof of Claim on or before May 8, 2009, the Bar

Date (or, if not filed by such date, any proof of Claim filed with leave of the Bankruptcy Court), unless an objection to such Claim has been duly filed and the Bankruptcy Court has not provisionally allowed the Claim for voting purposes. A vote may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that an acceptance or rejection was not solicited or procured or made in good faith or in accordance with the provisions of the Bankruptcy Code.

C. **Acceptance.** Class 2 will be deemed to have accepted the Plan if the Plan is accepted by at least two-thirds in dollar amount and more than one-half in number of the holders of Claims actually voting of such Class. Any ballot which is executed by the holder of an Allowed Claim or Interest but which does not indicate an acceptance or rejection of the Plan, shall be deemed neither an acceptance or a rejection of the Plan.

D. **Confirmation Hearing.** The Code requires the Bankruptcy Court to hold a hearing on confirmation of the Plan after the ballots have been cast. The confirmation hearing has been scheduled for the date set forth on the Court Order which accompanies this Disclosure Statement. The confirmation hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement of the adjournment made at the confirmation hearing. At the confirmation hearing, the Bankruptcy Court will (i) determine whether the Plan has been accepted by the requisite majorities of each voting class; (ii) hear and determine all objections to the Plan and to confirmation of the Plan; (iii) determine whether the Plan meets the requirements of the Bankruptcy Code and has been proposed in good faith; and (iv) confirm or refuse to confirm the Plan.

## E.    Statutory Requirements for Confirmation of the Plan

At the confirmation hearing, the Debtor will request that the Bankruptcy Court determine that the Plan satisfies the requirements of Section 1129 of the Bankruptcy Code. If so, the Bankruptcy Court shall enter an order confirming the Plan. The applicable requirements of Section 1129 of the Bankruptcy Code are as follows:

(a)    The Plan must comply with the applicable provisions of the Bankruptcy Code;

(b)    The Debtor must have complied with the applicable provisions of the Bankruptcy Code;

(c)    The Plan has been proposed in good faith and not by any means forbidden by law;

(d)    Any payment made or promised to be made by the Debtor under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Case, or in connection with the Plan and incident to the Chapter 11 Case, has been disclosed to the Bankruptcy Court, and any such payment made before confirmation of the Plan is reasonable, or if such payment is to be fixed after confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as reasonable;

(e)    The Debtor has disclosed the identity and affiliation of any individual proposed to serve, after confirmation of the Plan, as a director, officer, or voting trustee of the Debtor under the Plan. Moreover, the appointment to, or continuance in, such office of such individual, is consistent with the interests of holders of Claims and Interests and with public policy. Since the Plan contemplates a sale and, therefore, liquidation of the Debtor, there shall be no post-Confirmation Date compensation by the Debtor to the Debtor's existing management.

(f) <u>Feasibility and "Best Interest" Tests</u>: The Bankruptcy Code requires that in order to confirm the Plan, the Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization of the Debtor (the "Feasibility Test").

For a plan to meet the Feasibility Test, the Bankruptcy Court must find that the Debtor will possess the resources to meet its obligations under the Plan. Since the Plan contemplates a sale of the Debtor's assets, confirmation of the Plan is not likely to be followed by the need for further financial reorganization of the Debtor or any successor to the Debtor under the Plan. As the Plan is funded partly from the Purchase Price and party from a contribution of Mr. Rossi, the Debtor will be able to satisfy its obligations under the Plan.

In addition, the Bankruptcy Court must determine that the values of the distributions to be made under the Plan to each Class will equal or exceed the values which would be allocated to such Class in a liquidation under Chapter 7 of the Bankruptcy Code (the "Best Interest Test").

The Best Interest Test with respect to each impaired Class requires that each holder of a Claim or Interest in such Class either (i) accept the Plan or (ii) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the Debtor was liquidated under Chapter 7 of the Code.

To determine if the Plan is in the best interest of each class, the probable results of Chapter 7 liquidation must be compared with the results proposed under the Plan. As discussed above, the Debtor's liquidation value is significantly less than the Purchase Price, and if the Debtor were liquidated without the sale contemplated under the Plan, Class 2 unsecured creditors would likely receive no distribution. In addition, the conversion of the Chapter 11 Case to a

Chapter 7 proceeding would result in additional administrative expenses, i.e., trustee fees, commissions, and additional attorneys fees, all of which would further diminish any ultimate distribution to creditors.

Therefore, the Plan and sale contemplated therein proposes to maximize the value of the assets and return to the Debtor's creditors.

The Plan therefore satisfies all of the statutory requirements of Chapter 11 of the Code, including the "best interest" and feasibility requirements. The Plan is "fair and equitable" and "does not discriminate unfairly". The Plan complies with all other requirements of Chapter 11 of the Code and the Plan has been proposed in good faith.

**F.     Objections to Confirmation.**  Objections to confirmation must be in writing and specify in detail the name and address of the objector, all grounds for the objection and the amount of the Claim held by the objector.  Any such objection must be filed with the Bankruptcy Court and served upon the following, with a copy to the Court's chambers, so that it is received by them on or before 4:00 P.M. on the date set forth in the Court Order which accompanies this Disclosure Statement:

Rattet, Pasternak & Gordon-Oliver, LLP
Attorneys for the Debtor
550 Mamaroneck Avenue
Harrison, New York  10528
Attn:  Erica R. Feynman, Esq.

Objections to confirmation of the Plan are governed by Federal Rule of Bankruptcy Procedure 9014.

## V. ALTERNATIVES TO CONFIRMATION
   ## AND CONSUMMATION OF THE PLAN.

If the Plan is not confirmed and consummated the alternatives include: (i) preparation and presentation of an alternative plan of reorganization; (ii) liquidation of the Debtor under Chapter 7 of the Bankruptcy Code; or (iii) dismissal of the Chapter 11 case, which would result in all creditor claims and rights of collection and enforcement being restored in full.

## VI.   DISBURSING AGENT

The Disbursing Agent shall be Rattet, Pasternak & Gordon-Oliver, LLP, Attorneys for the Debtor. The Disbursing Agent shall not be liable for any distributions made in accordance with the Plan. The Disbursing Agent shall not be liable to the Debtor, any creditor or any other person, firm or corporation, for any error of judgment or for any mistake of law or fact or any act done, caused to be done, or omitted to be done, by the Disbursing Agent or any of its agents. The Disbursing Agent shall be liable only for acts of willful misconduct, gross negligence or breach of fiduciary duty by itself or such agents.

## VII.  POST-CONFIRMATION REPORTS

The Disbursing Agent shall be responsible for filing post-confirmation reports with the Bankruptcy Court and shall pay all quarterly fees required under 28 U.S.C. Section 1930, on behalf of the Debtor, until the earlier of (a) conversion or dismissal of this chapter 11 case or (b) entry of a final decree closing this chapter 11 case.

## XVIII.  TAX CONSEQUENCES

**A.**    **Tax Consequences of Confirmation.**  Confirmation may have federal income tax consequences for the Debtor and holders of Claims and Interests.   The Debtor has not

obtained and does not intend to request a ruling from the Internal Revenue Service (the "IRS"), nor has the Debtor obtained an opinion of counsel with respect to any tax matters. Any federal income tax matters raised by confirmation of the Plan are governed by the Internal Revenue Code and the regulations promulgated thereunder. The Debtor, creditors and holders of Interests are urged to consult their own counsel and tax advisors as to the consequences to them, under federal and applicable state, local and foreign tax laws, of the Plan. The following is intended to be a summary only and not a substitute for careful tax planning with a tax professional. The federal, state and local tax consequences of the Plan may be complex in some circumstances and, in some cases, uncertain. Accordingly, each holder of a Claim or Interest is strongly urged to consult with his or her own tax advisor regarding the federal, state and local tax consequences of the Plan, including but not limited to the receipt of cash under this Plan.

B.        **Tax Consequences to the Debtor.**  The Debtor may not recognize income as a result of the discharge of debt pursuant to the Plan because Section 108 of the Internal Revenue Code provides that taxpayers in bankruptcy proceedings do not recognize income from discharge of indebtedness. However, a taxpayer is required to reduce its "tax attributes" by the amount of the debt discharged. Tax attributes are reduced in the following order:  (i) net operating losses; (ii) general business credits; (iii) capital loss carryovers; (iv) basis in assets; (v) passive activity loss and credit carryovers; and (vi) foreign tax credit carryovers.

**XIX.  NOTICES**

All notices and correspondence should therefore be forwarded in writing to:

RATTET, PASTERNAK & GORDON OLIVER, LLP
550 Mamaroneck Avenue
Harrison, New York 10528
(914) 381-7400
Attn:   Erica R. Feynman, Esq.

**XX.  RECOMMENDATION**

The Debtor believes that confirmation of the Plan is preferable to any of the alternatives described above.  The Plan will provide greater recoveries than those available in liquidation to all holders of Claims.  Any other alternative would cause significant delay and uncertainty, as well as substantial administrative costs.  If the Plan is not confirmed, the continuation of the bankruptcy proceeding is likely to have an immediate adverse impact, perhaps irreparable, on the Debtor's liquidation.

**THUS, THE DEBTOR STRONGLY RECOMMENDS HOLDERS OF ALL CLAIMS VOTE TO ACCEPT THE PLAN. THE FOREGOING IS A BRIEF SUMMARY OF THE PLAN AND SHOULD NOT BE RELIED ON FOR VOTING PURPOSES. THE PLAN REPRESENTS A PROPOSED LEGALLY BINDING AGREEMENT BETWEEN THE DEBTOR AND ITS CREDITORS, AND SHOULD BE READ TOGETHER WITH THIS DISCLOSURE STATEMENT IN ORDER THAT AN INTELLIGENT AND INFORMED JUDGMENT CONCERNING THE PLAN CAN BE MADE.**

Dated: Harrison, New York
        September 8, 2009

SAM'S CERAMIC & STONE, INC.

By: __*/s/ Edward Rossi*_____
        Edward Rossi, President


RATTET, PASTERNAK & GORDON-OLIVER, LLP
Attorneys for the Debtor

By:__*Erica R. Feynman*_____
        Erica R. Feynman
        550 Mamaroneck Avenue
        Harrison, New York 10528
        (914) 381-7400